UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 1:23-cr-00144-2 |
| ) | Case No. 1:23-cr-00144-6 |
| Plaintiff, ) | |
| ) | Judge J. Philip Calabrese |
| v. ) | |
| ) | Magistrate Judge |
| ALFRED CULBRETH, ) | Jonathan D. Greenberg |
| ) | |
| and ) | |
| ) | |
| MARK GUMBEL, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION AND ORDER**

A grand jury charged American Premium Water Corporation and several individuals, including Defendants Alfred Culbreth, its former chief executive officer and chairman, and Mark Gumbel with conspiracy to commit securities fraud. Additionally, the indictment charges some individual Defendants, including Mr. Culbreth and Mr. Gumbel, with substantive counts of securities fraud and the other individual Defendants with substantive counts of wire fraud. At the relevant times, American Premium Water sold bottled water infused with cannabidiol and was publicly traded on the over-the-counter markets using the ticker symbol HIPH.

Mr. Culbreth moves to dismiss the charges against him or, in the alternative, severance from the individual Defendants charged with wire fraud. Mr. Gumbel moves to dismiss the charges against him. For the following reasons, the Court **DENIES** each motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2023, a grand jury returned a thirteen-count indictment charging Defendants as follows:

| | |
|---|---|
| American Premium Water Corporation | Count 1:  Conspiracy to Commit Securities Fraud |
| Alfred Culbreth | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 2–4, 8–9:  Securities Fraud |
| Ryan Fishoff | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 10–13:  Wire Fraud |
| Christian Stolz | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 10–13:  Wire Fraud |
| Zachary Davis | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 10–13:  Wire Fraud |
| Mark Gumbel | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 5–7:  Securities Fraud |
| Lorena Moreno | Count 1:  Conspiracy to Commit Securities Fraud<br>Counts 3–4:  Securities Fraud |

Count 1 of the indictment alleges that, from October 2013 to October 2019, Defendants conspired to defraud investors in American Premium Water by issuing millions of shares to themselves at little or no cost, then artificially inflating the price of the shares to sell the stock and enrich themselves at the expense of other investors. (ECF No. 1, ¶¶ 1 & 47–51, PageID #1 & #20–22.)  Counts 2 through 9 charge as securities fraud eight transactions on different dates in 2018, each involving a specified number of shares of the company's stock and yielding proceeds in various amounts.  (*Id.*, ¶¶ 52–53, PageID #22–23.)  Counts 10 through 13 charge as wire fraud

four specific wire transfers to and from particular banks on certain dates in amounts ranging from $1,000 to $10,000. (*Id.*, ¶¶ 54–56, PageID #23–24.)

Among other facts, the indictment alleges that, from 2013 to 2019, Mr. Culbreth and Mr. Gumbel executed pump-and-dump schemes by working with co-conspirators to inflate the price of HIPH. (*Id.*, ¶ 32, PageID #10.) The alleged co-conspirators paid stock promoters and media companies to promote HIPH. (*Id.*, ¶ 23, PageID #7.) At the same time, they deposited large blocks of shares into brokerage accounts to sell during the promotion. (*Id.*) They did not disclose payments to the promoters, which were drawn from the proceeds of the stock sales. (*Id.*, ¶¶ 27, 38 & 42, PageID #7, #11 & #15–17.) The indictment charges some of the deposits and sales as securities fraud and some of the payments as wire fraud. (*Id.*, ¶¶ 52–56, PageID #22–24.)

### A. The Charges against Mr. Culbreth

Specifically as to Mr. Culbreth, the indictment alleges that he was, at times, the CEO and chairman of American Premium Water and that he "issued and controlled a substantial number of outstanding, preferred, and free-trading shares of HIPH through family members, co-conspirators, and associates over which he had influence and control." (*Id.*, ¶ 11, PageID #4.) Further, the indictment alleges that Mr. Culbreth coordinated and paid stock promoters to inflate the trading volume and share price of HIPH without disclosing the payments, caused others to do the same, directed and managed insider and affiliate sales of HIPH stock, and fraudulently sold HIPH stock. (*Id.*)

3

According to the indictment, Mr. Culbreth obtained control of a public shell company in October 2013, changed its name to American Premium Water, and created HIPH as a publicly traded company. (*Id.*, ¶ 17, PageID #5.) He allegedly issued preferred shares to himself and co-conspirators that would be unaffected by stock splits, then used reverse splits to inflate the value of their preferred shares. (*Id.*, ¶¶ 18–19, 33 & 40c, PageID #5–6, #10–11 & #13.) In executing these transactions, he and co-conspirators falsely claimed that shares deposited in their names were obtained through bona-fide arms-length transactions with HIPH and that they were not affiliates of the company. (*Id.*, ¶ 21, PageID #6.)

B.  **The Charges against Mr. Gumbel**

As to Mr. Gumbel, the indictment alleges that he "controlled a substantial number of outstanding, preferred, and free-trading shares of HIPH," "introduced stock promoters" to Mr. Culbreth, "paid stock promoters to inflate the trading volume and share price of HIPH," and "misrepresented his status as a non-affiliate to sell HIPH for his and others' benefits." (*Id.*, ¶ 15, PageID #5.) According to the indictment, Mr. Gumbel acquired preferred shares of HIPH that could not be affected by stock splits (*id.*, ¶¶ 18–19, PageID #5–6), then "fraudulently engineered price movements and trading volume in HIPH stock by coordinating the sale of large blocks of shares timed with the issuance of press releases and paid solicitation of public investors" (*id.*, ¶ 22, PageID #6–7).

For its counts of securities fraud, the indictment incorporates these factual allegations, describes the alleged acts using language that mirrors the statutory

4

elements of the offense, and then provides the following table after the phrase "each act below constituting a separate count:"

| Count | Approximate Stock Deposit Date | Approx. Number of Shares | Ticker Symbol | Defendant(s) Charged | Proceeds of Stock Sale |
|---|---|---|---|---|---|
| 2 | January 16, 2018 | 6,000,000 | HIPH | CULBRETH | $155,309.65 |
| 3 | April 4, 2018 | 1,800,000 | HIPH | MORENO CULBRETH | $39,302.72 |
| 4 | June 5, 2018 | 9,000,000 | HIPH | MORENO CULBRETH | $168,275.31 |
| 5 | March 13, 2018 | 4,500,000 | HIPH | GUMBEL | $97,287.91 |
| 6 | June 1, 2018 | 3,000,000 | HIPH | GUMBEL | $51,046.76 |
| 7 | August 21, 2018 | 3,500,000 | HIPH | GUMBEL | $169,166.66 |
| 8 | September 7, 2018 | 13,000,000 | HIPH | CULBRETH | $789,481.82 |
| 9 | October 1, 2018 | 6,000,000 | HIPH | CULBRETH | $481,472.11 |

(*Id.*, ¶¶ 52–53, PageID #22–23.)

## STATEMENT OF THE CASE

Mr. Culbreth moves to dismiss the charges against him for misjoinder under Rule 8(b) or, in the alternative, to sever him from the Defendants charged in Counts 10 through 13, the wire fraud counts. (ECF No. 87.) Mr. Gumbel moves to dismiss the charges against him. (ECF No. 93.) He argues that the three substantive counts of securities fraud brought against him (Count 5, Count 6, and Count 7) should be dismissed because they fail to state an offense (or, if read to incorporate all other substantive paragraphs of the indictment, would be multiplicitous) and because they fail to allege venue. Additionally, he argues that the conspiracy charge is impermissibly duplicitous. On June 5, 2025, the Court held oral argument on both motions.

## ANALYSIS

**I.     Rule 8(b)**

Rule 8(b) permits joinder of two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim P. 8(b). "All defendants need not be charged in each count." *Id.* Additionally, Rule 8 allows for joinder of two or more offenses where "the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). These Rules "promote economy and efficiency" and seek "to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968) (citation omitted). At oral argument, counsel for Mr. Culbreth emphasized that the Rule 8 inquiry is distinct from that under Rule 14, which allows a court to order separate trials of counts or defendants to remedy prejudicial joinder. Because Mr. Culbreth moves only under Rule 8(b), the Court addresses only the requirements of that Rule.

Counts 10 through 13 charge Defendants Zachary Davis, Ryan Fishoff, and Christian Stolz with wire fraud based on wire transfers from an undercover officer posing as an investor and wire transfers that allegedly constituted kickbacks drawn from the undercover officer's investments. (ECF No. 1, ¶¶ 42 & 56, PageID #16–17 & #24.) To argue that he cannot be joined as a defendant on an indictment that includes these counts, Mr. Culbreth construes the phrase "series of acts or

6

transactions" in Rule 8(b) narrowly to include only "any of the wires to the [undercover officer]." (ECF No. 87, PageID #449.) Mr. Culbreth contends that these counts "have no connection" to him because he was not involved in the meetings between Mr. Fishoff, Mr. Stolz, and the undercover officer and never participated in any of the wire transfers to the undercover officer. (*Id.*)

Mr. Culbreth construes Rule 8(b) too narrowly. The indictment describes an overall series of transactions allegedly intended to manipulate the price of HIPH stock through a variety of means or tactics. Solicitation of the undercover officer's participation was only one part of the conspiracy. Accordingly, the relevant "series of acts or transactions" is not merely the wire transfers related to that specific undercover officer, but rather the broader series of transactions comprising part of the broader conspiracy. *United States v. Beverly*, 369 F.3d 516, 533 (6th Cir. 2004) (citing *United States v. Johnson*, 763 F.2d 773, 776 (6th Cir. 1985)). In that context, even though Mr. Culbreth was not personally involved in these particular wire transfers, the indictment alleges that they were part of a conspiracy that he orchestrated and organized and in which he participated. Therefore, they are "logically interrelated" and properly joined with the counts charging the conspiracy itself as well as other acts in support of it. *Id.* (quoting *Johnson*, 763 F.2d at 776).

Mr. Culbreth invokes *United States v. Spivak*, 735 F. Supp. 3d 902, 930 (N.D. Ohio 2024), where the Court trifurcated trial before the same jury in a case charging multiple conspiracies involving different defendants at different times and fraud charges that related to each of the conspiracies. Setting aside the fact that

7

Mr. Culbreth does not seek bifurcation, the facts in *Spivak* materially differ from those here. Unlike *Spivak*, the indictment in this case describes only one conspiracy. The wire fraud charges fall within the ambit of that conspiracy, and the indictment properly joins them as part of a series of "acts or transactions" constituting the conspiracy charged.

## II. Mr. Gumbel's Motion to Dismiss

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The Supreme Court has recognized two constitutional requirements for an indictment. First, the indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020). Second, the indictment must "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Resendiz-Ponce*, 549 U.S. at 108.

Consistent with these constitutional mandates, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Recitation of statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (quoting *Hamling*, 418 U.S. at 117–18). This notice

8

does not require the indictment to charge every fact the prosecution intends to prove at trial. "Further, '[t]he indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. An indictment is to be construed liberally in favor of its sufficiency.'" *United States v. Lee*, 919 F.3d 340, 349 (6th Cir. 2019) (quoting *McAuliffe*, 490 F.3d at 531).

### II.A. Securities Fraud (Count 5, Count 6, and Count 7)

Mr. Gumbel advances two arguments for dismissal of the substantive counts of securities fraud against him charged in Count 5, Count 6, and Count 7. First, he argues that they fail to state an offense or, in the alternative, are multiplicitous. Second, he argues that they fail to allege venue. The Court considers each contention in turn.

### II.A.1. Statement of Offense and Multiplicity

Count 5, Count 6, and Count 7 of the indictment charge Mr. Gumbel with violations of 15 U.S.C. § 78j(b), which outlaws using or employing, in connection with the purchase or sale of any security, "any manipulative or deceptive device or contrivance" that the Securities and Exchange Commission may prescribe to protect investors. Rule 10b-5 implements this statute, broadly making it unlawful for any person, directly or indirectly, to engage in certain fraudulent practices in connection with the purchase or sale of a security. The Rule provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,

9

>   (b)  To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
>   (c)  To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. The indictment charges violations of each subsection of the Rule in each securities fraud count. (ECF No. 1, ¶ 53, PageID #23.) Count 5 involves $97,287.91 in stock sale proceeds associated with a deposit of 4.5 million HIPH shares on March 13, 2018. Count 6 involves $51,046.76 in proceeds associated with a deposit of 3 million shares on June 1, 2018. Count 7 involves $169,166.66 in proceeds associated with a deposit of 3.5 million shares on August 21, 2018.

Mr. Gumbel does not contest that a stock deposit could constitute part of a scheme that violates one or more of the subdivisions of Rule 10b-5. Instead, he argues that a stock deposit, "standing alone," cannot be a "manipulative device" within the statutory meaning because it is "only one step in advancement of the scheme as a whole, and not the scheme to defraud in and of itself." (ECF No. 93, PageID #498.) However, the indictment does not purport to charge Mr. Gumbel merely for a particular deposit of stock. (ECF No. 1, ¶ 52, PageID #22.) Instead, the indictment alleges that Mr. Gumbel "caused the deposit of HIPH shares into brokerage accounts with the purpose of selling the stock, while it was being promoted" and that he used the proceeds of such sales "to enrich the conspirators, to pay for promotion[,] and to pay kickbacks to unregistered brokers, boiler-rooms, and salesmen." (*Id.*, ¶ 38,

10

PageID #11.) Although the indictment might benefit from more explanation about the nature of the "acts" listed in the table in Paragraph 53, the inclusion of both deposit information and a column titled "Proceeds of Stock Sale" indicate that the counts do not charge merely the deposit of stock, but a scheme to defraud, untrue statements or omissions of material facts, or acts or a course of business that operate as a fraud. (*Id.*, ¶ 53, PageID #23.) These counts also incorporate by reference the prior allegations describing a broader conspiracy to commit securities fraud.

Anticipating this response, Mr. Gumbel argues in the alternative that, if these substantive counts incorporate the factual allegations regarding the overall scheme, then the counts are "multiplicitous." (ECF No. 93, PageID #500.) "'Multiplicity' is charging a single offense in more than one count in an indictment." *United States v. Myers*, 854 F.3d 341, 355 (6th Cir. 2017) (quoting *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008)). Mr. Gumbel contends that only the scheme as a whole, not any individual stock transaction, can support a charge of securities fraud. Therefore, the argument goes, splitting the overall scheme into three counts "would turn one potential charge into three." (ECF No. 93, PageID #500.)

As Defendant acknowledges (*id.*, PageID #498), no court in the Sixth Circuit approaches security fraud charging in this way. Instead, Defendant relies on *United States v. Haddy*, 134 F.3d 542 (3d Cir. 1998), and *United States v. Langford*, 946 F.2d 798 (11th Cir. 1991). But neither supports his novel theory that the unit of prosecution for securities fraud must be the entirety of a fraudulent scheme.

11

In *Haddy*, the Third Circuit held that it was not duplicitous for the indictment to charge an overall scheme of stock manipulation rather than each individual securities transaction. 134 F.3d at 547–49. "Duplicity is the improper joining of distinct and separate offenses in a single count," something of the inverse of multiplicity. *Id.* at 548. However, the Third Circuit explicitly "decline[d] to dictate an inflexible rule regarding the allowable unit of prosecution in a securities fraud case." *Id.* at 549. Instead, the court held that an indictment *could* charge an overall scheme rather than a single transaction, not that it *must*. The Third Circuit expressly cited *Langford*, the other case on which Defendant relies, as an example of "a multiplicity case" where "the overall scheme need not be charged in a single count." *Id.* at 549 (characterizing *Langford*, 946 F.2d 798).

In *Langford*, the indictment charged the defendant with three counts of securities fraud, "all based on the same scheme to defraud and *on the same purchase of securities*." 946 F.2d at 804 (emphasis added). Although the indictment recited each subsection of Rule 10b-5 for each count, it did not allege separate material misstatements or separate transactions for each count. *Id.* The Eleventh Circuit held that such charging was multiplicitous because "each count of the indictment must be based on a separate purchase or sale of securities and each count must specify a false statement of material fact—not a full-blown scheme to defraud—in connection with that purchase or sale." *Id.* Accordingly, *Langford* holds that less than a full scheme may serve as the "unit of prosecution" for securities fraud. And

12

its reasoning shows the indictment in this case is not multiplicitous. For these reasons, the authorities to which Defendant points defeat the argument he makes.

### II.B.  Venue

Under the Constitution, "[t]rial of all Crimes . . . shall be held in the State where the . . . Crimes shall have been committed." U.S. Const. art. III, § 2, cl.3. Further, the Sixth Amendment requires a trial in "the state and district wherein the crime shall have been committed." U.S. Const. amend. VI. For prosecutions of securities fraud, venue is proper "in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa(a). At trial, "the government need only present proof sufficient to allow a rational trier of fact to conclude that venue was proper by a preponderance of the evidence." *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005) (citing *United States v. Zidell*, 323 F.3d 412, 420–21 (6th Cir. 2003)). Before trial, a court may grant a motion to dismiss for lack of venue "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3).

Mr. Gumbel argues that the indictment fails to establish that venue is proper because it does not describe any "act or transaction" taking place in the Northern District of Ohio. However, the indictment does allege that Mr. Gumbel committed acts meeting the elements of securities fraud "in the Northern District of Ohio, Eastern Division and elsewhere." (ECF No. 1, ¶ 53, PageID #22–23.) Taking the facts in the indictment as true, as the Court must on a motion to dismiss, the United States provides a factual basis to find that venue on Count 5, Count 6, and Count 7 is proper in the Northern District of Ohio. Of course, the United States might not

13

prove venue for these counts. And more information in the indictment to corroborate venue might have proved helpful. But the allegation regarding the location of the acts in the indictment suffices in the present procedural posture.

### II.B. Conspiracy (Count 1)

Finally, Mr. Gumbel argues that Count 1, which charges all Defendants with conspiracy to commit securities fraud, should be dismissed as duplicitous. As previously mentioned, an indictment is duplicitous if it "charges separate offenses within a single count." *United States v. Anderson*, 605 F.3d 404, 414 (6th Cir. 2010). Defendant argues that the conspiracy charged in Count 1 is actually four separate conspiracies. He contends that these four separate conspiracies have no overlap in time, some difference in co-conspirators, and differences in the nature of the alleged overt acts. On his reading, the indictment charges four distinct conspiracies involving different co-conspirators (though some overlap) spanning different time periods: (1) February 2014 to December 2015, when individuals including Mr. Gumbel allegedly deposited shares into a brokerage account in connection with the promotion of HIPH shares (ECF No. 1, ¶¶ 33–39, PageID #10–13); (2) February 2016 to February 2018, when co-conspirators including Mr. Gumbel allegedly amassed shares of HIPH to use in connection with a promotion scheme (*id.*, ¶¶ 40–41, PageID #13–15); (3) March to September 2018, when undercover law enforcement officers conducted an operation—Mr. Gumbel is not a part of these events (*id.*, ¶¶ 42–43, PageID #15–17); and (4) October 2018 to October 2019, when manipulation of the price of HIPH shares allegedly continued (*id.*, ¶¶ 44–46, PageID #18–20).

14

But this argument overstates the supposed differences in the conspiracy over time.

*First*, although Defendant splits the conspiracy into four non-overlapping time periods, each time period flows nearly immediately into the next without temporal gaps, forming one uninterrupted chain of events. Only one month separates the first two proposed conspiracies, and the third begins immediately after the second ends. Similarly, the fourth proposed conspiracy begins just after the end of the third.

*Second*, the changes in the composition of the co-conspirators that Defendant identifies are not the "major differences" he claims. (ECF No. 93, PageID #505.) As a preliminary matter, there is a fundamental flaw in Defendant's argument, which he does not address: "the fact that individuals may intermittently involve themselves in a conspiracy does not preclude a finding that the conspiracy was singular in nature." *United States v. Wilson*, 168 F.3d 916, 924 (6th Cir. 1999). Especially where a conspiracy continues for a long period of time, "[n]ew parties may join the agreement . . . while others may terminate their relationship. The parties are not always identical, but this does not mean that there are separate conspiracies." *Id.* (quoting *United States v. Warner*, 690 F.2d 545, 549 n.7 (6th Cir. 1982)).

Even accepting his characterization of "changes" in the conspiracy's membership, Defendant's contention that these changes suggest entirely distinct conspiracies does not withstand scrutiny. In *United States v. Meda*, 812 F.3d 502, 509 (6th Cir. 2015), on which Defendant relies, the court identified two conspiracies with the individuals who participated in both conspiracies "play[ing] minor roles in

15

each." Here, in contrast, the co-conspirators who remain the same across time are the more major players, while minor characters such as call room operators and undercover officers cycle in and out.

*Third*, neither of the arguments Defendant advances regarding the nature of the alleged overt acts is persuasive. As an initial matter, Defendant takes issue with the distinct offenses of wire fraud and securities fraud being charged within a single conspiracy. (ECF No. 93, PageID #506.) But he does not explain why a conspiracy to commit securities fraud might not also involve acts constituting wire fraud.

Substantively, he argues that different overt acts mark the four time periods in the conspiracy. However, even adopting his descriptions of the overt acts in each time period, it is clear that the acts are different tactics seeking to carry out the overarching goal of "issuing millions of shares to [Defendants] at little or no cost and then artificially controlling the trading volume and price of the shares to sell the stock and enrich themselves, causing losses to investors." (ECF No. 1, ¶ 1, PageID #1.) None of the tactics Mr. Gumbel identifies—using "boiler room" call centers, creating large blocks of shares to be sold in coordination with promotion, soliciting investments to pay promoters, and involving various corporate entities—diverges from that goal or betrays an aim of defrauding anyone other than the investing public. (*See* ECF No. 93, PageID #506–07.)

At bottom, "the essence of the crime of conspiracy is agreement." *Warner*, 690 F.2d 545, 549 (6th Cir. 1982). Here, "the indictment ties the allegations together through its assertion that the acts were undertaken in furtherance of a common,

16

overarching agreement among the conspirators." *United States v. Xu*, 114 F.4th 829, 839 (6th Cir. 2024). In any event, "whether a single conspiracy or multiple conspiracies have been shown is a question of fact resolved by the jury." *Id.* at 840 (quoting *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990)). Defendant retains the right to put the United States to its proof at trial. To the extent the evidence at trial reveals some duplicitousness in Count 1, proper instructions will ensure that the jury returns a unanimous verdict on each element of each offense charged. But Defendant fails to demonstrate that the indictment, taken as true, is duplicitous.

## CONCLUSION

For all these reasons, the Court **DENIES** Defendant Alfred Culbreth's motion to dismiss the charges against him or to sever him from the Defendants charged in Counts 10 through 13 (ECF No. 87) and Defendant Mark Gumbel's motion to dismiss the indictment (ECF No. 93).

**SO ORDERED.**

Dated: June 21, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio