IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR144-2 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| ALFRED CULBRETH, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Erica D. Barnhill, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing of Defendant Alfred Culbreth.  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States respectfully requests that this Court sentence Culbreth within the 63 to 78 month range contemplated by the plea agreement.  The United States also asks that this Court order Culbreth to pay $6,590,691.27 in restitution.

I.      **FACTUAL BACKGROUND**

As outlined in detail in the factual basis of the plea agreement and the Presentence Report ("PSR"), Defendant Alfred Culbreth obtained control of the public shell that would become American Premium Water (ticker: HIPH) in 2013 and held roles as CEO and Chairman during the conspiracy.  Culbreth leveraged reverse stock splits and preferred shares to amass near-total control of HIPH stock in the hands of himself, his family members, nominees, and coconspirators.  Culbreth and other coconspirators then manipulated the HIPH share price through undisclosed stock promotions to inflate share prices and sell shares at the inflated prices. The company first marketed itself as an alkaline water company, then a CBD water company.

Small amounts of water were produced and sold but the water existed primarily to support the promotion and sale of HIPH stock.

## II. APPLICABLE LEGAL STANDARDS

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a), including the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

## III. SENTENCING GUIDELINES COMPUTATION

The government concurs with the PSR's calculation setting Defendant's adjusted offense level at 35 after all upward adjustments. (Final PSR, ¶ 30). The government also agrees that Defendant accepted responsibility pursuant to U.S.S.G. § 3E1.1(a) and further agrees that Defendant's timely guilty plea has assisted the government by significantly streamlining the government's trial preparation and presentation of evidence should either of the remaining defendants proceed to trial. (*Id.*, ¶ 32-33). The United States therefore moves this Court to

apply the additional one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  After applying the adjustments for acceptance of responsibility, the government concurs with the PSR that Defendant's total offense level is correctly calculated at 32.  (*Id.*, ¶ 34).

The government agrees that Defendant has zero criminal history points, placing him in Criminal History Category I.  (*Id.*, ¶ 38).

## IV. <u>SENTENCING CONSIDERATIONS</u>

A sentence within the parties' agreed range of 63 to 78 months is sufficient but not greater than necessary to satisfy the purposes and principles of sentencing and to avoid unwarranted sentencing disparities.  Because Defendant was the CEO of HIPH during part of the conspiracy, and because he organized and led the criminal activity throughout, both an officer/director enhancement (+4) as well as an aggravating role enhancement (+4) are applied to his Guidelines calculation.  The application of the aggravating role enhancement also precludes application of the zero-point offender adjustment (-2) under U.S.S.G. § 4C1.1.  The Government maintains that the text of the Guidelines coupled with the underlying facts support the application of both enhancements, and both are properly applied here; however, the Government also recognizes that both enhancements relate to the same underlying course of conduct, and that applying both enhancements (and the consequent preclusion of a downward adjustment under 4C1.1) effectively results in a 10-level increase in Culbreth's offense level for leading the scheme, substantially increasing his overall advisory Guidelines range.  The parties therefore agreed to recommend that this Court impose a sentence between 63 and 78 months in prison pursuant to Fed. R. Crim. P. 11(c)(1)(C).  (Culbreth Plea Agreement, ¶ 14)

A sentence within the requested 63 to 78 month range is appropriate here because it is in line with sentences actually imposed for defendants with similar total offense levels sentenced

under U.S.S.G. § 2B1.1 in the past five fiscal years (FY 2020-2024). *See generally* United States Sentencing Commission Judiciary Sentencing Information (JSIN), https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed January 14, 2026).[1] The recommended Guidelines range of 63 to 78 months falls between the median and average sentences imposed for Defendants in Criminal History Category I with final offense levels between 28 and 32:

| Offense level | Range (CHC I) | Imposed Average | Imposed Median |
|---|---|---|---|
| 32 | 121-151 | 89 | 84 |
| 31 | 108-135 | 73 | 72 |
| 30 | 97-121 | 75 | 78 |
| 29 | 87-108 | 61 | 60 |
| 28 | 78-97 | 61 | 60 |

*Id.* A sentence within a 63 to 78 month range is also commensurate with recent sentences for investment fraud cases in this District with similar loss amounts where defendants pled guilty prior to trial. *See*, *e.g.*, *United States v. Motil*, No. 24-CR-289 (N.D. Ohio) (70 month sentence in $5 million investment fraud/Ponzi scheme); *United States v. Turnipseede*, No. 22-CR-450 (N.D. Ohio) (65 month sentence in $4.7 million investment fraud/Ponzi scheme); *United States v. Spivak et al.*, No. 21-CR-491 (N.D. Ohio) (63 month sentence and $1.6 million in restitution for defendant Richard Mallion in securities fraud scheme); *United States v. Collins et al.*, No. 20-CR-842 (41 month sentence for lead defendant in $2.3 million securities fraud scheme). Therefore, a sentence within the agreed 63 to 78 month range would be consistent with the nature and seriousness of the offense conduct while avoiding unwarranted sentencing disparities.

---

[1] JSIN data does not differentiate between sentences imposed before and after the adoption of U.S.S.G. § 4C1.1 in November 2023.

## V.    **RESTITUTION**

The parties have agreed to recommend that this Court order Defendant to pay **$6,590,691.27** in restitution to the identified victims who purchased HIPH during the time Defendant and his coconspirators were manipulating the stock price.[2] Culbreth is the first defendant to be sentenced in this case; to the extent of any overlap with any other defendants found to be responsible for the same losses, the government will ask that those restitution amounts be ordered jointly and severally.

## VI.    **CONCLUSION**

For the reasons discussed above, the United States respectfully requests that this Court sentence Defendant to a term of imprisonment between 63 and 78 months, and order Defendant to pay $6,590,691.27 in restitution.

                                            Respectfully submitted,

                                            DAVID M. TOEPFER
                                            United States Attorney

By:   /s/ Erica D. Barnhill
       Erica D. Barnhill (OH: 0079309)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3967/3919
       (216) 522-2403 (facsimile)
       Erica.Barnhill@usdoj.gov

---

[2] Because of the number of victims in this case, the government will provide a detailed breakdown of the restitution amounts separately.